ELECTRONICALLY FILED
Nov 13 2018
U.S. DISTRICT COURT
Northern District of WV

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| **JAN HAYSLETT and CHAD HAYSLETT,**<br><br>**Plaintiffs,**<br><br>-against-<br>**THE ABBOTT LABORATORIES, BURROUGHS-WELLCOME & CO., INC., n/k/a Glaxo Wellcome, Inc., CARNRICK LABORATORIES, INC., n/k/a as Elan Pharmaceuticals, DART INDUSTRIES INC., p/k/a Rexall Drug Company, Inc., ELI LILLY AND COMPANY, KREMERS-URBAN CO., n/k/a Mequon Company, LANNETT CO., INC., McNEILAB, INC., MALLINCKRODT INC., GlaxoSmithKline LLC f/k/a as SmithKline Beecham Corp., MERCK & CO., INC., MERRELL DOW PHARMACEUTICALS, INC., RHONE-POULENC RORER PHARMACEUTICALS, INC., p/k/a William H. Rorer, Inc., ROWELL LABORATORIES, INC., n/k/a Solvay Pharmaceuticals, E.R. SQUIBB & SONS, INC., n/k/a E.R. Squibb & Sons, LLC, and THE UPJOHN COMPANY,**<br><br>**Defendants.** | **Case Number:**  5:18-CV-186 (Stamp)<br><br>**Complaint and Jury Demand** |

Plaintiffs, by their attorneys, **HILL, PETERSON, CARPER, BEE & DEITZLER, PLLC and DOUGLAS & LONDON, P.C.**, upon information and belief, at all times hereinafter mentioned, allege as follows:

## NATURE OF THE CASE

1.      This action is brought on behalf of Plaintiff, JAN HAYSLETT, who was exposed to the pharmaceutical drug diethylstilbestrol ("DES") *in utero* and, as a result, was caused to suffer clear cell adenocarcinoma of the cervix and uterus.

2.      This action is also brought on behalf of Plaintiff, CHAD HAYSLETT, who is the husband of JAN HAYSLETT, and who has suffered loss of consortium damages.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiffs exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have their principal places of business in states other than the state in which the named Plaintiffs reside.

4.      This Court has personal jurisdiction over each and every Defendant because, at all relevant times, each and every Defendant:

(a)      transacted and conducted business in the state of West Virginia with respect to its DES, as well as other pharmaceutical drugs, and Plaintiffs' cause of action arises out of the business they transacted and conducted in the state of West Virginia;

(b)      targeted numerous healthcare providers in the state of West Virginia for the sale and distribution of their pharmaceutical drugs, including DES, to be prescribed to West Virginia residents;

(c)      targeted the West Virginian physician who prescribed DES to Plaintiff JAN HAYSLETT's mother, a West Virginia resident, for the sale and distribution of their DES, in addition to other pharmaceutical drugs;

(d)      purposefully directed their business activities, particularly with respect to their DES and pharmaceutical drugs, to healthcare providers in the state of West Virginia to be prescribed to patients who resided in the state of West Virginia;

(e)      purposely placed their DES and pharmaceutical drugs into the stream of commerce in the state of West Virginia;

(f)      purposely placed the DES that was prescribed to Plaintiff JAN HAYSLETT's mother into the stream of commerce in West Virginia to be prescribed by her treating physician;

(g)      expected or reasonably should have expected that their DES and other pharmaceutical drugs would reach the state of West Virginia and be purchased by healthcare providers in West Virginia;

(h)    anticipated or reasonably should have anticipated that their DES and other pharmaceutical drugs would reach the state of West Virginia and be purchased by healthcare providers in the state of West Virginia;

(i)    derived substantial revenue from the sales of their DES and other pharmaceutical drugs to healthcare facilities in the state of West Virginia;

(j)    engaged in a persistent course of conduct in the state of West Virginia with respect to their DES and other pharmaceutical drugs;

(k)    committed certain of the tortious acts complained of herein (i.e. failure to warn) in the state of West Virginia;

(l)    reasonably expected or should have expected their acts and omissions to have consequences within the state of West Virginia; and

(m)    intended to serve the West Virginia market, thereby purposely availing themselves to jurisdiction in the state of West Virginia and submitting to the authority of the state of West Virginia.

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2). A substantial portion of the events and omissions giving rise to this lawsuit occurred in this District.

**PARTY PLAINTIFFS**

6.    Plaintiff, JAN HAYSLETT, is a citizen of the United States of America and a resident of the State of West Virginia.

7.    Plaintiff, JAN HAYSLETT, was born on June 19, 1959 in Fairmont, West Virginia.

8.    Plaintiff, JAN HAYSLETT, was exposed *in utero* to DES.

9.    As a result of her exposure to DES *in utero*, Plaintiff, JAN HAYSLETT, was caused to suffer clear cell adenocarcinoma of the cervix and uterus, including any and all of its sequelae.

10.     Plaintiff JAN HAYSLETT did not discover, nor could she have discovered, that she was suffering from clear cell adenocarcinoma of the cervix and uterus until she was diagnosed with clear cell adenocarcinoma of the cervix and uterus on or about June 26, 2017.

11.     As a result of her exposure to DES *in utero*, Plaintiff, JAN HAYSLETT has been caused to suffer severe personal injuries, pain, suffering, and emotional distress, as well as to incur substantial economic damages.

12.     Plaintiff, CHAD HAYSLETT, is a citizen of the United States of America and a resident of the State of West Virginia.

13.     At all relevant times, Plaintiff, CHAD HAYSLETT, was the lawful spouse of the Plaintiff, JAN HAYSLETT.

## PARTY DEFENDANTS

14.     Defendant THE ABBOTT LABORATORIES is a corporation incorporated under the laws of the State of Illinois with its principal place of business in Illinois.

15.     Defendant THE ABBOTT LABORATORIES at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

16.     Defendant THE ABBOTT LABORATORIES has transacted and conducted business in the State of West Virginia.

17.     Defendant THE ABBOTT LABORATORIES has derived substantial revenue from goods and products used in the State of West Virginia.

18.     Defendant THE ABBOTT LABORATORIES expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue

from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

19.    Defendant BURROUGHS-WELLCOME AND CO., INC., N/K/A GLAXO-WELLCOME is a corporation under the laws of the State of North Carolina with its principal place of business in North Carolina.

20.    Defendant BURROUGHS-WELLCOME AND CO., INC., N/K/A GLAXO-WELLCOME at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

21.    Defendant BURROUGHS-WELLCOME AND CO., INC., N/K/A GLAXO-WELLCOME has transacted and conducted business in the State of West Virginia.

22.    Defendant BURROUGHS-WELLCOME AND CO., INC., N/K/A GLAXO-WELLCOME has derived substantial revenue from goods and products used in the State of West Virginia.

23.    Defendant BURROUGHS-WELLCOME AND CO., INC., N/K/A GLAXO-WELLCOME expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

24.    Defendant CARNRICK LABORATORIES, INC. is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

25.    Defendant CARNRICK LABORATORIES, INC. at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising,

marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

26.    Defendant CARNRICK LABORATORIES, INC.  has transacted and conducted business in the State of West Virginia.

27.    Defendant CARNRICK LABORATORIES, INC.   has derived substantial revenue from goods and products used in the State of West Virginia.

28.    Defendant CARNRICK LABORATORIES, INC. expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

29.    Defendant DART INDUSTRIES, INC., P/K/A REXALL DRUG COMPANY, INC. is a corporation incorporated under the laws of Illinois with its principal place of business in Delaware.

30.    Defendant DART INDUSTRIES, INC., P/K/A REXALL DRUG COMPANY, INC. at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

31.    Defendant DART INDUSTRIES, INC., P/K/A REXALL DRUG COMPANY, INC. has transacted and conducted business in the State of West Virginia.

32.    Defendant DART INDUSTRIES, INC., P/K/A REXALL DRUG COMPANY, INC. has derived substantial revenue from goods and products used in the State of West Virginia.

33.      Defendant DART INDUSTRIES, INC., P/K/A REXALL DRUG COMPANY, INC. expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

34.      Defendant ELI LILLY AND COMPANY is a corporation incorporated under the laws of the State of Indiana with its principal place of business in Indiana.

35.      Defendant ELI LILLY AND COMPANY at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

36.      Defendant ELI LILLY AND COMPANY has transacted and conducted business in the State of West Virginia.

37.      Defendant ELI LILLY AND COMPANY has derived substantial revenue from goods and products used in the State of West Virginia.

38.      Defendant ELI LILLY AND COMPANY expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

39.      Defendant KREMERS-URBAN CO., N/K/A MEQUON COMPANY, is a corporation incorporated in the State of Wisconsin with its principal place of business in Wisconsin.

40.      Defendant KREMERS-URBAN CO., N/K/A MEQUON COMPANY. at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing,

labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

41.     Defendant KREMERS-URBAN CO., N/K/A MEQUON COMPANY has transacted and conducted business in the State of West Virginia.

42.     Defendant KREMERS-URBAN CO., N/K/A MEQUON COMPANY.   has derived substantial revenue from goods and products used in the State of West Virginia.

43.      Defendant KREMERS-URBAN CO., N/K/A MEQUON COMPANY. expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

44.     Defendant LANNETT CO., INC., is a foreign corporation with its principal place of business in Pennsylvania.

45.     Defendant LANNETT CO., INC at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

46.      Defendant LANNETT CO., INC has transacted and conducted business in the State of West Virginia.

47.     Defendant LANNETT CO., INC has derived substantial revenue from goods and products used in the State of West Virginia.

48.      Defendant LANNETT CO., INC expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue from

interstate commerce within the United States of America, and the State of West Virginia, more particularly.

49.    Defendant MCNEILAB, INC. is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

50.    Defendant MCNEILAB, INC. at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

51.    Defendant MCNEILAB, INC. has transacted and conducted business in the State of West Virginia.

52.    Defendant MCNEILAB, INC. has derived substantial revenue from goods and products used in the State of West Virginia.

53.    Defendant MCNEILAB, INC. expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

54.    Defendant MALLINCKRODT, INC., is a corporation incorporated under the laws of the State of California with its principal place of business in California.

55.    Defendant MALLINCKRODT, INC.. at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

56.     Defendant MALLINCKRODT, INC., has transacted and conducted business in the State of West Virginia.

57.     Defendant MALLINCKRODT, INC., has derived substantial revenue from goods and products used in the State of West Virginia.

58.     Defendant MALLINCKRODT, INC., expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

59.     Defendant GLAXOSMITHKLINE LLC F/K/A AS SMITHKLINE BEECHAM CORP., is a corporation incorporated under the laws of the State of Tennessee with its principal place of business in Tennessee.

60.     Defendant GLAXOSMITHKLINE LLC F/K/A AS SMITHKLINE BEECHAM CORP., at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

61.     Defendant GLAXOSMITHKLINE LLC F/K/A AS SMITHKLINE BEECHAM CORP., has transacted and conducted business in the State of West Virginia.

62.     Defendant GLAXOSMITHKLINE LLC F/K/A AS SMITHKLINE BEECHAM CORP., has derived substantial revenue from goods and products used in the State of West Virginia.

63.     Defendant GLAXOSMITHKLINE LLC F/K/A AS SMITHKLINE BEECHAM CORP., expected or should have expected its acts to have consequences within the State of West

Virginia and derives substantial revenue from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

64.     Defendant MERCK & CO., INC., is a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.

65.     Defendant MERCK & CO., INC., at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

66.     Defendant MERCK & CO., INC., has transacted and conducted business in the State of West Virginia.

67.     Defendant MERCK & CO., INC., has derived substantial revenue from goods and products used in the State of West Virginia.

68.     Defendant MERCK & CO., INC., expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

69.     Defendant MERRELL DOW PHARMACEUTICALS, INC., is a corporation incorporated under the laws of the State of Ohio with its principal place of business in Ohio.

70.     Defendant MERRELL DOW PHARMACEUTICALS, INC., at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

71.     Defendant MERRELL DOW PHARMACEUTICALS, INC., has transacted and conducted business in the State of West Virginia.

72.     Defendant MERRELL DOW PHARMACEUTICALS, INC., has derived substantial revenue from goods and products used in the State of West Virginia.

73.     Defendant MERRELL DOW PHARMACEUTICALS, INC., expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

74.     Defendant RHONE-POULENC RORER PHARMACEUTICALS, INC. P/K/A WILLIAM H. RORER, INC., is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

75.     Defendant RHONE-POULENC RORER PHARMACEUTICALS, INC. P/K/A WILLIAM H. RORER, INC., at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

76.     Defendant RHONE-POULENC RORER PHARMACEUTICALS, INC. P/K/A WILLIAM H. RORER, INC., has transacted and conducted business in the State of West Virginia.

77.     Defendant RHONE-POULENC RORER PHARMACEUTICALS, INC. P/K/A WILLIAM H. RORER, INC., has derived substantial revenue from goods and products used in the State of West Virginia.

78.     Defendant RHONE-POULENC RORER PHARMACEUTICALS, INC. P/K/A WILLIAM H. RORER, INC., expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

79.     Defendant ROWELL LABORATORIES, INC., N/K/A SOLVAY PHARMA-CEUTICALS is a corporation incorporated under the laws of the State of Minnesota with its principal place of business in Minnesota.

80.     Defendant ROWELL LABORATORIES, INC., N/K/A SOLVAY PHARMA-CEUTICALS at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

81.     Defendant ROWELL LABORATORIES, INC., N/K/A SOLVAY PHARMA-CEUTICALS has transacted and conducted business in the State of West Virginia.

82.     Defendant ROWELL LABORATORIES, INC., N/K/A SOLVAY PHARMA-CEUTICALS., has derived substantial revenue from goods and products used in the State of West Virginia.

83.     Defendant E.R. SQUIBB & SONS, INC. is a corporation incorporated in the State of New Jersey with its principal place of business in New Jersey.

84.     Defendant E.R. SQUIBB & SONS, INC. at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

85.     Defendant E.R. SQUIBB & SONS, INC. has transacted and conducted business in the State of West Virginia.

86.     Defendant E.R. SQUIBB & SONS, INC. has derived substantial revenue from goods and products used in the State of West Virginia.

87.     Defendant E.R. SQUIBB & SONS, INC. expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

88.     Defendant THE UPJOHN COMPANY is a corporation incorporated under the laws of the State of Michigan with its principal place of business in Michigan.

89.     Defendant THE UPJOHN COMPANY at all times relevant herein was in the business of creating, designing, researching, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing DES into the stream of commerce for use by the public, including the Plaintiff.

90.     Defendant THE UPJOHN COMPANY has transacted and conducted business in the State of West Virginia.

91.     Defendant THE UPJOHN COMPANY has derived substantial revenue from goods and products used in the State of West Virginia.

92.     Defendant THE UPJOHN COMPANY expected or should have expected its acts to have consequences within the State of West Virginia and derives substantial revenue from interstate commerce within the United States of America, and the State of West Virginia, more particularly.

**FACTUAL BACKGROUND**

93.     At all relevant times, Defendants were in the business of and did create, design, manufacture, test, formulate, advertise, market, promote, sell, and/or distribute the drug DES.

94.     During the period in and about 1940 and prior and subsequent thereto, Defendants assisted each other to prepare the drug DES, which thereupon became a generic drug manufactured by them and by other drug companies.  Defendants also assisted each other to exploit, market and secure permission from the FDA to publicly sell DES for ingestion by humans. Defendants knew and were aware, or should have known, that the drug had been insufficiently tested; that it had not been sufficiently tested upon humans; and lacked adequate warnings. Nevertheless, these Defendants endeavored to obtain FDA approval of the drug in that form and otherwise assisted each other and other drug companies to bring DES to the market, thereby enabling such others and themselves to market a drug involving harmful results to users and the offspring of users.

95.     The Defendants made certain claims and representations which were contained in their supplemental New Drug Application, some of which were that the new use of said DES in the prevention of miscarriages and accidents in pregnancy was both safe and efficacious.

96.     The Defendants made certain claims which were distributed and circulated to the medical profession and to the general public through advertising, literature, detail men, brochures and other materials stating that DES was a safe and efficacious drug for the treatment of accidents in pregnancy.

97.     At the time, these Defendants knew or should have known that DES and its components had the potential to become harmful to users and offspring of users and knew or should have known that the drug was ineffective for the purpose for which it was marketed and sold.

98.    Upon information and belief, these Defendants and the other persons and drug companies secured FDA approval; brought DES to the market where it was produced by these Defendants and/or other drug companies with the same content and same potential for harm; and distributed and marketed DES to the public so as to induce its use in the manner in which it was used by Plaintiff's mother.

99.    Upon information and belief, these Defendants and the other drug companies misrepresented the risks inherent in the use of DES in their applications to the FDA and to other governmental persons and/or agencies.

100.    Defendants knew, or should have known, of the above-mentioned risks based upon the state of knowledge as it existed at that time and upon generally accepted engineering, medical and research standards and principles.

101.    The Defendants, their agents, servants and/or employees, manufactured, produced, promoted, formulated, created or designed DES without testing it for use in pregnancy, without making proper and sufficient tests to determine the dangers and contra-indications thereof, and without warning the public and the medical profession of the dangers and contra-indications and side effects inherent in the aforesaid drug.  The Defendants also negligently advertised and recommended the use of DES without sufficient knowledge as to its dangerous propensities; represented that the said drug was safe for use for its intended purpose, when, in fact, it was unsafe; and failed to conduct sufficient testing programs to determine whether or not the aforesaid drug was safe for use.  Defendants knew or should have known that said drug was unsafe and unfit for use by reason of the dangerous effects, contra-indications and dangers to a fetus during the pregnancy of its mother.  Defendants, their agents, servants and/or employees, improperly obtained the approval of the FDA to market the drug by misrepresenting the risks of

the drug to the FDA; knew that it was a substance which crossed the placental barrier and therefore could cause injury to a fetus *in utero*; and were otherwise negligent.

102.   Defendants, by their agents, servants and/or employees were careless and negligent in the manufacturing, selling, distribution, merchandising, advertising, promotion, compounding, packaging, fabrication, analyzing, marketing, and recommendation of said drug DES without making proper and sufficient tests to determine the dangers thereof.

103.   By reason of the foregoing, those exposed to DES have developed, or are at extremely high risk for experiencing, certain cancers, infertility, and ectopic pregnancies, as well as other serious injuries.

104.   In this action, Plaintiffs claim that Plaintiff JAN HAYSLETT was exposed to DES *in utero* and that her mother ingested DES, which was marketed by Defendants.

105.   Plaintiff JAN HAYSLETT has sustained severe, serious, permanent and personal injuries, including but not limited to clear cell adenocarcinoma of the cervix and uterus, will require extensive hospitalizations, medical care, surgeries, and lifelong attention, will be incapacitated from her normal functioning and will be unable to pursue normal means of livelihood, will be precluded from having a normal life, physically, intellectually, vocationally, emotionally, or psychologically, and Plaintiffs have been otherwise grossly damaged.

106.   Whether or not Plaintiffs prove which particular manufacturer produced the drug ingested by Plaintiff JAN HAYSLETT's mother, Defendants will be liable to her, based on theories of alternative liability and/or market share liability, because they marketed the drug for pregnancy use.

107.   Defendants' actions and inactions as set forth herein endangered the health and welfare of countless individuals, including Plaintiff, JAN HAYSLETT, and demonstrated each and every Defendant's reckless disregard for each of them.

### FIRST CAUSE OF ACTION AS AGAINST THE DEFENDANTS
### (STRICT PRODUCTS LIABILITY)

108.   Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 107, with the same force and effect as if more fully set forth herein.

109.   At all times herein mentioned, the Defendants, and each of them, manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, sold, purchased, prescribed, and administered the aforesaid DES as hereinabove described and prior to the time that Plaintiff or Plaintiff's mother, and thereby Plaintiff, used said product.

110.   The said drug product, more particularly known as DES, was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

111.   At those times, the said drug product DES, was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, the general public and, in particular, the Plaintiff JAN HAYSLETT.

112.   Defendants, while regularly engaged in the business activities aforementioned, did design, develop, manufacture, produce, test, sell, market and/or distribute a certain drug product, more particularly known as DES, which was ingested by Plaintiff JAN HAYSLETT's mother and thereby Plaintiff JAN HAYSLETT.

18

113.   At all times herein mentioned, the said drug product DES was in a defective condition and unsafe and Defendants, individually, jointly and severally, knew or had reason to know that said product was defective and unsafe, especially when used as a miscarriage preventative.

114.   The said drug product DES was inherently dangerous.

115.   At the time of the occurrence and ingestion by Plaintiff JAN HAYSLETT's mother, the said drug product, DES, was being used for the purposes and a manner normally intended.

116.   Neither Plaintiff JAN HAYSLETT nor her mother could, by the exercise of reasonable care, have discovered the defects herein mentioned and/or perceived their danger.

117.   As a direct and proximate result of the defective condition of DES manufactured and supplied by Defendants, Plaintiff was caused to sustain severe and grievous personal injuries, as described herein.

118.   By reason of the foregoing, the Defendants have become strictly liable in tort to the Plaintiffs for the marketing of a defective product, regardless of whether they marketed the particular pill taken by Plaintiff JAN HAYSLETT's mother.

119.   As a result of the foregoing acts and omissions, the Plaintiff JAN HAYSLETT requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

120.   By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## SECOND CAUSE OF ACTION AS AGAINST THE DEFENDANTS
## (NEGLIGENCE)

121.   Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 107, with the same force and effect as if more fully set forth herein.

122.   Defendants' DES was expected to, and did, reach the intended physicians and patients, including Plaintiff, JAN HAYSLETT' mother, without substantial change to the condition in which it was designed, manufactured, supplied, promoted, advertised, labeled, sold, and/or distributed by Defendants.

123.   Defendants had a duty to exercise reasonable care in the creation, design, research, manufacture, testing, marketing, supply, promotion, advertising, labeling, sale, and/or distribution of DES into the stream of commerce, including but not limited to a duty to assure that the DES would not cause harm to individuals exposed to DES, such as the Plaintiff JAN HAYSLETT.

124.   Defendants also had a duty to create, design, manufacture, research, manufacture, test, market, supply, promote, advertise, label, sell, and/or distribute their DES in such a way as to avoid harm to individuals who would be exposed to DES, such as the Plaintiff JAN HAYSLETT, and/or to refrain from such activities upon the knowledge and/or constructive knowledge that such a drug posed an unreasonable risk of harm to patients who would be exposed to it, such as the Plaintiff JAN HAYSLETT.

125.   Defendants failed to exercise ordinary care in creating, designing, researching, manufacturing, marketing, supplying, promoting, labeling, advertising, packaging, selling, testing, quality assurance, quality control and/or distributing their DES into interstate commerce in that Defendants knew or should have known that exposure to DES created a high risk of unreasonable, dangerous side effects, including severe and personal injuries, which may be

lasting in nature, physical pain and mental anguish, diminished enjoyment of life, the need for lifelong medical treatment, monitoring and/or medications, and fear of cancer.

126.   Defendants violated its above-listed duties in myriad ways, including but not limited to the following:

(a)   manufacturing, producing, promoting, formulating, creating, and/or designing DES without testing it for use in pregnancy;

(b)   selling DES without making proper and sufficient tests to determine the dangers and contra-indications thereof;

(c)   negligently failing to adequately and correctly warn the public and the medical profession of the dangers and contra-indications and side effects inherent in the aforesaid drug and failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with said product;

(d)   negligently advertising and recommending the use of the aforesaid drug without sufficient knowledge as to its dangerous propensities;

(e)   negligently representing that the said drug was safe for use for its intended purpose, when, in fact, it was unsafe;

(f)   not conducting sufficient testing programs to determine whether or not the aforesaid drug was safe for use; in that Defendants herein knew or should have known that said drug was unsafe and unfit for use by reason of the dangerous effects, contra-indications and dangers to a fetus during the pregnancy of its mother; and

(g)   improperly obtaining the approval of the FDA to market the drug by misrepresenting the risks of the drug to the FDA; in knowing that it was a substance which crossed the placental barrier and therefore could cause injury to a fetus *in utero.*

127.   As a direct and proximate result of the aforementioned negligence on the part of the Defendants, Plaintiff was caused to sustain severe and grievous personal injuries, including but not limited to clear cell adenocarcinoma of the cervix and uterus, as set forth herein.

128.   By reason of Defendants' actions as aforementioned, Defendants are liable to the Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiff JAN HAYSLETT's mother.

129.   As a result of Defendants' foregoing acts and omissions, Plaintiff JAN HAYSLETT requires and/or will require additional health care and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

130.   By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

**THIRD CAUSE OF ACTION AS
AGAINST THE DEFENDANTS
(BREACH OF EXPRESS WARRANTY)**

131.   Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 107, with the same force and effect as if more fully set forth herein.

132.   Defendants, and each of them, expressly represented to the users and their physicians that said drug DES was safe and fit for use for the purposes intended, that it was of merchantable quality, and that it did not produce any side effects dangerous to life, and that it was adequately tested and fit for its intended use.

133.   Members of the medical community relied upon the representations and warranties of the Defendants for use and ingestion of said drug DES in prescribing, recommending and/or dispensing same.

134.   Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that said drug DES was not safe and fit for the use intended, and, in fact, produces serious injuries to the user and the offspring of the user.

135.   As a result of the aforementioned breach of warranties by Defendants, Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

136.   By reason of Defendants' actions as aforementioned, Defendants are liable to the Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiff JAN HAYSELTT's mother.

137.   By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## FOURTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (BREACH OF IMPLIED WARRANTY)

138.   Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 107, with the same force and effect as if more fully set forth herein.

139.   At all times herein mentioned, the Defendants, and each of them, manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, sold, purchased, prescribed, and administered the aforesaid DES as described above and prior to the time that Plaintiff JAN HAYSLETT's mother, and thereby Plaintiff, JAN HAYSLET, used said product.

140.   The Defendants, and each of them, impliedly represented and warranted to the users and their physicians that the aforementioned drug product, more particularly known as DES, was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

141.   The said representations and warranties aforementioned were false, misleading, and inaccurate in that said drug product DES, was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

142.   DES products were injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

143.   As a result of the aforementioned breach of warranties by Defendants, Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

144.   By reason of Defendants' actions as aforementioned, Defendants are liable to the Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiff JAN HAYSLETT's mother.

145.   By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

**FIFTH CAUSE OF ACTION AS
AGAINST THE DEFENDANTS
(FRAUDULENT MISREPRESENTATION AND CONCEALMENT)**

146.   Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 107, with the same force and effect as if more fully set forth herein.

147.   The Defendants falsely and fraudulently represented to the medical community and to the public in general that said drug DES was a drug that had been tested and found to be safe and effective for the prevention of miscarriages and other pregnancy related uses.

148.   The representations made by said Defendants were, in fact, false.

149.    When said representations were made by Defendants, they individually, jointly, and severally, knew those representations to be false, willfully, wantonly and recklessly disregarded whether the representations were true, and these representations were made by said Defendants with the intent of defrauding and deceiving the public in general, and the medical community in particular, and with the intent of inducing the public in general, and the medical community in particular, to prescribe, dispense and purchase said drug DES for the prevention of miscarriages, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiffs herein.

150.    At the time the aforesaid representations were made by the Defendants and, at the time that Plaintiff JAN HAYSLETT's mother ingested said drug DES, Plaintiff JAN HAYSLETT and her mother were ignorant of the falsity of said representations and reasonably believed them to be true.

151.    In reliance upon said representations, Plaintiff JAN HAYSLETT's mother was induced to and did take DES during her pregnancy with her daughter, the Plaintiff Jan HAYSLETT.

152.    As a result of the fraudulent misrepresentations of the Defendants set forth hereinabove, said Defendants knew and were aware or should have known that the drug had been insufficiently tested, that it had not been tested or sufficiently tested upon humans, or lacked adequate warnings, and these Defendants cooperated with others to obtain FDA approval of the drug in that form and otherwise assisted other persons and drug companies to bring DES to market a drug involving harmful results to users and the offspring of users, thereby breaching their duty to such users and aiding and assisting other persons and drug companies marketing DES to do the same.

153.   At this time, these Defendants and other persons and drug companies with whom they were cooperating and exchanging mutual assistance in order to bring DES to the market and secure approval thereof, knew or should have known that DES, its components and in combination, had a potential to, could, and would cause severe and grievous injury to the user and to the offspring of the users of said product and that the drug was ineffective for the purpose for which it was marketed and sold and was inherently dangerous.

154.   These Defendants and other persons and drug companies, as a result of the mutual aid of each to other and in combination, secured FDA approval, brought DES to the market where it was produced by these Defendants and other drug companies with the same content and the same potential for harm, and these Defendants and the other persons and drug companies conferred and assisted in promoting and advertising, and said Defendants acted fraudulently, wantonly and maliciously to the detriment of the Plaintiffs.

155.   As a result of Defendants' fraudulent and deceitful conduct, representations and concealments, the Plaintiffs were caused to sustain severe and grievous personal injuries, as set forth herein.

156.   By reason of Defendants' actions as aforementioned, Defendants are liable to the Plaintiffs regardless of whether or not they manufactured the particular DES drug ingested by Plaintiff's JAN HAYSLETT's mother.

157.   By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

**<u>SIXTH CAUSE OF ACTION AS
AGAINST THE DEFENDANTS
(LOSS OF CONSORTIUM)</u>**

158.    Plaintiffs repeat, reiterate, and reallege each and every allegation in Paragraphs 1 through 107, with the same force and effect as if more fully set forth herein.

159.    Plaintiff, CHAD HAYSLETT, was at all relevant times the lawful spouse of Plaintiff, JAN HAYSLETT, and as such, was entitled to the comfort, enjoyment, society and services of his spouse.

160.    As a direct and proximate result of the foregoing, Plaintiff, CHAD HAYSLETT, was deprived of the comfort and enjoyment of the services and society of his spouse and has suffered and will continue to suffer economic loss, and has otherwise been emotionally and economically injured.

161.    The Plaintiff, CHAD HAYSLETT's injuries and damages are permanent and will continue into the future.

162.    The Plaintiffs seek actual damages from the Defendants as alleged herein.

163.    For the reasons set forth herein, Plaintiff, CHAD HAYSLETT, suffered and will continue to suffer the loss of his loved one's support, companionship, services, society, love and affection.

164.    By reason of the foregoing, Plaintiffs have been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.    For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case may be transferred for trial;

2.      Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe injuries sustained by Plaintiffs, health care costs, loss of wages and/or earning capacity, and medical monitoring, together with interest and costs as provided by law;

3.      Punitive and/or exemplary damages for the intentional, wanton, willful, fraudulent, reckless, and/or grossly negligent acts of Defendants, who demonstrated a profound disregard and reckless indifference for the health and welfare of the general public and of the Plaintiffs, in an amount sufficient to punish Defendants and deter future similar conduct;

4.      Awarding Plaintiffs reasonable attorneys' fees;

5.      Awarding Plaintiffs the cost of these proceedings; and

6.      Such other and further relief as this Court deems just and proper.

Dated:  November 9, 2018

**HILL, PETERSON, CARPER, BEE & DEITZLER, PLLC**

By: _/s/ Harry G. Deitzler_____
        Harry G. Deitzler
        Northgate Business Park
        500 Tracy Way
        Charleston, WV 25311
        Ph: (304) 345-5667
        Fax: (304) 345-1519
        Email: HGDeitzler@hpcbd.com

        -and-

**DOUGLAS & LONDON, P.C.**

By: _/s/ Michael A. London_____
        MICHAEL A. LONDON (ML-7510)
        *Pro hac vice pending*
        VIRGINIA E. ANELLO (VEA-8197)
        *Pro hac vice pending*
        59 Maiden Lane, 6th Floor
        New York, NY 10038

Ph: (212) 566-7500
Fax: (212) 566-7501
Email: mlondon@douglasandlondon.com
vanello@douglasandlondon.com


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues.


By: */s/ Harry G. Deitzler*
Harry G. Deitzler